HENRY MARSHKA v. REPUBLIC IRON & STEEL CO.

ALLEGATION THAT MASTER ASSURED SERVANT OF SAFE CHARACTER OF WORK, NOT SUSTAINED BY PROOF OF SUCH ASSURANCE RESPECTING SIMILAR JOB.

An employe engaged in the operation of a certain machine for cutting iron, who had been in charge of the same for six months, will be held to have assumed as a risk incident to his employment, the danger arising from the cutting of two pieces of iron bolted together at the ends, where it appears that there was no special request on the part of the master that he perform the job in question and no specific assurance that such work was without hazard; and an allegation that plaintiff had been assured by the master that there was no danger connected with such work will not be sustained by proof that a superior servant representing the master had at a time prior to the accident assured the plaintiff that another operation consisting of the cutting of two pieces of iron similarly bolted together was not hazardous, where it appears that the deduction could not reasonably be made therefrom that the cutting of other pieces so bolted together, but of varying thicknesses and degrees of hardness, could also be performed without danger.

ERROR to Lucas common pleas court.

**C. A. Thatcher,** for plaintiff in error.

**Holbrook & Monsarrat,** for defendant in error.

## WILDMAN, J.

The plaintiff in error, who was plaintiff below, brought a suit against the defendant, claiming a verdict because of a certain injury sustained, as he claimed in his petition, by reason of the negligence of the defendant. The plaintiff was an employe of the defendant and was engaged in the operation of a certain machine or device designed for cutting iron in the shop or factory of the defendant; and while

so engaged on March 26, 1904, he sustained the injury described in his petition. He was engaged in cutting two pieces of iron fastened together by bolts at the ends; and he alleges in his petition that to attempt to cut two pieces of iron so bolted together was dangerous; that he was unaware of that fact; that he had been instructed by a superior employe, representing the company, that the work could be conducted without hazard.

To state the matter a little more specifically, he alleges that some time prior to March 26, 1904, the date of his injury, the defendant company had pieces of iron so bolted together placed with other material, which the plaintiff was required to cut; that the plaintiff told the superintendent and foreman over him and in charge of his work, that he feared that he might receive injury in attempting to cut two pieces of iron fastened together; that said superintendent and foreman told plaintiff that there was no danger in doing said work and requested and required plaintiff to continue to do said work, and then he alleges that in the operation of the machine on the day of the injury and while so engaged in cutting iron he was required to cut two pieces of iron so fastened together; that, while so doing, said pieces of iron flew from the machine in such manner as to strike plaintiff's right arm and fracture both bones thereof between the wrist and elbow. He alleges that the defendant was careless and negligent in requiring and requesting plaintiff to cut two pieces of iron so bolted together. He says that he did not know and had no means of knowing of the danger to which he was exposed and continued at work relying upon the assurance of his superior that the same was safe; that the defendant knew, or, by the exercise of ordinary care should have known, that to require the plaintiff to cut two pieces of iron so bolted together in said machine would expose plaintiff to the danger of receiving bodily injury.

After the introduction of the plaintiff's evidence the court arrested the case from the jury and directed a verdict for the defendant, and to this order and ruling exception was taken, and the plaintiff preserved his rights in the usual form.

It appears by the evidence that upon some previous occasion this plaintiff had received another injury while operating the same machine. It does not appear as to just how that prior injury was caused, but it also appears, and perhaps might fairly be inferred, if it did not appear, that the plaintiff had some apprehension of injury at almost all times while operating the machine; and indeed, in the very transaction

Marshka v. Iron & Steel Co.

which is the basis of this case, the plaintiff indicated by his conduct, as it seems to us, a sort of nervousness or fear that injury to him might result from his work. There is no claim whatever of any defect in the machine itself. There is no claim that there was any negligence of any kind on the part of the defendant company, except as stated in the petition, ''in requiring. and requesting plaintiff to cut the two pieces of iron so bolted together.'' There is no charge in the petition that the defendant was otherwise negligent in the giving of the directions which the plaintiff received. It is alleged, to be sure, in the petition, that he received assurances from the superior that it was safe to do the work in the manner described, or safe to cut two pieces of iron while bolted together; but he alleges that, rather in the way of exonerating himself from any charge of contributory negligence than in the way of charging the defendant company with negligence in the mere assurance, to him, that it was safe to do the work in this way. The only allegation of negligence as against the defendant company that I can find in the petition is the allegation that the defendant was careless and negligent in requiring or requesting him to cut two pieces of iron so bolted together.

Now we think this was a danger incident to the business; that the danger was reasonably apparent; that the plaintiff did apprehend it; and, unless the case is analogous to that found in one of the decisions by our Supreme Court, *Van Duzen Gas & Gasoline Eng. Co.* v. *Schelies,* 61 Ohio St. 298 [55 N. E. Rep. 998], the plaintiff would not be entitled to recover. The Van Duzen case laid down a general proposition which has been not seldom misapplied by counsel in the trial of personal injury cases, and an effort has been made to extend the doctrine therein expressed to cases which do not stand on all fours with the case in which the doctrine was enunciated. That was a case where the person injured had been peremptorily directed to go into a place of danger, and the Supreme Court held in substance,—I have not the case now before me,—that where the danger was not so obvious as to have prevented any man of ordinary prudence from obeying the order to do the hazardous work, he would not be prevented from recovery against the company giving the direction to do the work, notwithstanding the fact that the danger was not a concealed danger. I have before me the case of *Cleveland* v. *Wolf,* 25 O. C. C. 406. The syllabus reads:

''A charge to the jury in an action by a servant against the master to recover for damages resulting from the negligence of the latter, is improper, which permits the jury to conclude that the servant would

not be guilty of negligence by reason of obeying general orders of the master unless the danger of so doing was so obvious that a man of ordinary prudence would not have exposed himself to it, and which wholly ignores the question of assumed risk, it appearing from the evidence that plaintiff was engaged at the time in the performance of his usual and ordinary duties which he had been engaged in for several years for the master, and it also further appearing that no special or peremptory orders or instructions were given to the servant on the particular occasion. In such case, the court should define the kind of orders or instructions which would relieve the servant from the thought, care and scrutiny which he otherwise would be bound to exercise in the discharge of an ordinary duty which had in it certain elements of danger which he assumed while so engaged.''

The judge announcing the opinion says, on page 407:

''There was no evidence produced showing that Wolf was peremptorily ordered into the trench at the time he was hurt. He himself says, upon cross-examination, that he always knew his duty and went down into the trench without being told, and that the pipe was put in the trench that day in the same way and in the usual manner of putting pipes in trenches. Wolf had worked for the city twelve or thirteen years, the first five or six years in digging water pipe trenches, and the remainder of the time in putting water pipes in position at the bottom of the trench and connecting them together—the very things he started to do when he was injured.''

After some consideration of these facts in connection with the rule announced in *Van Duzen Gas & Gasoline Eng. Co.* v. *Schelies, supra,* the court concludes that the proper rule is set forth by the Supreme Court in the case of *Northern Ohio Ry.* v. *Rigby,* 69 Ohio St. 184. I have this case also before me and deem it pertinent to the case at bar. I quote the decision of the court as expressed in the syllabus:

''2. In the trial of an action brought by an employe, against a railway company, to recover for injuries sustained by the explosion of a car heater on a passenger coach, while he was attempting to thaw out the frozen water pipes while the car was standing in the yards of the company; and where the evidence tends to prove that the heater was without a steam gauge to the knowledge of the employe, and that the explosion was caused by the use of a solid plug in the drum of the heater instead of a safety valve, which plug was put in by the employe a few days before the explosion by direction of his superior; and where the evidence further tends to prove that the employe was an ex-

Marshka v. Iron & Steel Co.

perienced foreman of car repairers, and familiar with the system of heating used on said car, and with the proper method and means of thawing out the water pipes when frozen; and where the only order from the superior was a telegram to get the car ready for use; to charge the jury without further explanation, that: 'If you find at the time of the explosion and for several days prior thereto, there was no safety value in the drum of the Baker heater in car 22; that said safety valve had been removed and replaced by a solid plug, and that Rigby knew of these facts when he attempted to thaw out said heater at the time of the explosion complained of; and further, if you find that said explosion resulted wholly from the fact that said drum had a solid plug instead of a safety valve, then Rigby would nevertheless be entitled to recover in this action if you find by a preponderance of the evidence that in attempting to thaw out said heater, as he did, he was acting in obedience to a positive order of his superior, that a person of ordinary prudence would, under the circumstances, have obeyed such order, and that in obeying such order he used ordinary care,' is misleading and erroneous.

"3. Where the superior, while absent, sends an order to an employe to perform certain work or duty, but leaves to such employe the selection of the means and manner of performing the service, the doctrine of *Van Duzen Gas & Gasoline Engine Co.* v. *Schelies*, 61 Ohio St. 298, does not apply."

I will not tarry to call attention to the reasoning of the judge to sustain the doctrine laid down in the syllabus by the court; but it is enough to say that the case at bar has many features paralleling those in *Cleveland* v. *Wolf, supra,* decided by the Cuyahoga circuit court and the case to which I have just referred, the case of *Northern Ohio Ry.* v. *Rigby, supra.* The plaintiff in this case had been for some time employed in the operation of this particular machine, and for a period of about six months, he was in charge of it; he had had experience in the cutting of different kinds of iron, and upon more than one occasion he had had occasion to cut bars or pieces of iron bolted together; and that he clearly apprehended some hazard from the work in which he was employed, is very apparent from all the evidence.

Now there is another circumstance, which to the mind of the court makes the ruling of the court below entirely justified by the circumstances here. As I have said, the only negligence complained of was the giving the direction to this man to cut bars or pieces of iron when bolted together. The evidence clearly discloses that the machines did

not at all times and under all circumstances work alike; that is to say, that the manner in which the machines would cut would vary with the hardness of the metal sought to be cut, with perhaps the size or length of the pieces and some other conditions. It does appear by the testimony that upon a prior occasion the plaintiff had been assured, in substance, by one Jones, his superior, that the work which he was then complaining about would be safe, and Jones went on and did it himself with apparent safety; he cut some pieces of iron which were bolted together without any resulting injury to himself, and the plaintiff saw him do it; and upon the assurance that it was safe, it is possible that the plaintiff continued in the work and thereafter without any instructions cut all kinds of material when so bolted together. Whether they were precisely like the pieces which were cut by the superintendent Jones upon the occasion when he gave the instructions to the plaintiff does not appear; that assurance, after all, was at the best but an opinion of the superintendent; and the work was not so complicated, it was not so difficult to ascertain whether it was safe or perilous, as to excuse the plaintiff from any observation for himself. It was emphasized to some extent by one witness, that while it might be dangerous to cut steel when so bolted together, it might not be so dangerous to cut iron. I am referring to the testimony of the witness, Hathaway, found at the bottom of page 7 and some paragraphs following.

Now the conditions when the superintendent gave instructions may have been altogether safe conditions. He did not say, so far as the testimony discloses, "You may go on cutting bars of iron at all times and under all circumstances when you find them bolted together and you can do it with safety." There was no assurance of that kind, no expression of opinion along that line; but the only expression was, that upon that particular occasion, with that particular iron bolted together, just as it was, in the opinion of the superintendent, it was safe to do the work. It appears from the testimony of Marshka that the iron which did the injury was made up of a sort of strap or bar iron, and a round or cylindrical piece or rod about an inch in diameter which was bolted to it at the ends; the rod or bar, whichever it was, that was cut by the superintendent was only three quarters of an inch thick. It does not seem to be a very great difference and yet it might be just the difference which would make the one operation safe and the other perilous.

Again, the regulation of the speed of the machine might have something to do with the safety or the peril. Mr. Marshka in his testimony on page 20 says that he could regulate the speed of the machine. There

are so many circumstances that are to be taken into account in the determination as to whether the instructions were negligent or not, and there was such an utter failure to show that the conditions were precisely the same on the day in March when Mr. Marshka received the injury and on the prior occasion when the superintendent gave the instruction that the court was justified in not permitting the case to go to the jury and allow the jury to guess that the instruction was to be construed as one applicable to the work on the day of the injury and with the materials which were then to be operated upon. Again applying the principles of *Cleveland* v. *Wolf, supra,* and *Northern Ohio Ry.* v. *Rigby, supra,* already cited, there was no peremptory order on the day of the injury to go into a place of danger; he was simply doing the work as in *Cleveland* v. *Wolf, supra,* as stated by Judge Winch of the Cuyahoga circuit, in the usual way of doing it, the way he had been accustomed to do it for months. There was no special direction upon that occasion. The hazard seems to have been altogether apparent, and we think that it is the kind of a hazard which was assumed when he accepted the employment, and with regard to which it is to be presumed that his compensation was fixed. Under all the circumstances we think that the court did not err in arresting the case from the jury and directing a verdict for the defendant.

The judgment will be affirmed without penalty.

**Haynes** and **Parker, JJ.,** concur.